```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

HUGH RAYBURN,

                       Plaintiff,

    -vs-                        **No. 6:14-CV-06500 (MAT)**
                                         **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.
_____

## I.   Introduction

Represented by counsel, Hugh Rayburn ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted, and the matter is reversed and remanded solely for the calculation and payment of benefits.

## II.   Procedural History

The record reveals that in May 2012, plaintiff (d/o/b March 2, 1955) applied for DIB, alleging disability as of October 30, 2008. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge Michael W. Devlin ("the ALJ") on October 8, 2013. The ALJ issued an unfavorable

decision on January 31, 2014. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of Evidence

Plaintiff, who was 58 years old at the time of his hearing, worked as a quality assurance technician for 29 years, from 1976 through 2008, and then as a mechanical inspector until 2012, when, as he testified, he was terminated from his position because he was unable to work as a result of back spasms. Plaintiff testified that he had been diagnosed with dystonia and Parkinson's disease. According to plaintiff, his dystonia caused cramping in his hands, fingers, feet, ankles, and toes, and as of the time of the hearing, he had started experiencing tremors in his legs and hands. He testified that, since losing his job, he did some work around the house, such as gardening, but could not work for more than one half hour before he would experience cramping, which would last for 20 to 45 minutes.

Plaintiff's medical record reveals that he complained of cramping to treating physicians as early as July 2007. In July 2010, Plaintiff reported to treating physician Dr. Michael Mitchko that he had been experiencing bilateral hand and wrist discomfort. In March 2012, Dr. Mitchko assessed probable carpal tunnel syndrome, noting positive Tinel's sign and weakness in the right and left wrist; Dr. Mitchko referred plaintiff to neurology. Later that month, neurologist Dr. Robert Knapp noted that plaintiff had

a minimal reduction in spontaneous blinking, reproducible dystonia of the right hand, and a station, gait, and balance notable for slight reduction of arm swing on the right. Dr. Knapp prescribed Baclofen for treatment of muscle spasms. Dr. Knapp found similar results in May 2012.

After continuing to treat for dystonia, plaintiff saw neurologist Dr. Deanna Grattan in February 2013. Dr. Grattan diagnosed plaintiff with an atypical presentation of Parkinson's disease, noting mild rigidity in his left wrist through his left elbow, axial rigidity, mild dystonic posturing of the right hand, slightly flexed and kyphotic stance, slow gait, and a decreased arm swing on the right. Dr. Grattan noted that plaintiff "took several steps back and may have fallen if not caught with retropulsion." T. 355. Dr. Grattan prescribed Sinemet, for the treatment of Parkinson's disease.

In April 2013, Dr. Knapp noted that plaintiff had developed a right hand rest tremor and generalized bradykinesia for functional skills. Plaintiff reported rigidity in all four limbs, and reported disequilibrium and an incident of falling. Dr. Knapp agreed with the Parkinson's diagnosis, and prescribed Requip in addition to the Sinomet for treatment. Plaintiff continued to treat with Drs. Mitchko and Knapp, reporting that his prescriptions had helped with cramping, but that his tremors had worsened. In July 2013, plaintiff reported to Dr. Knapp that cramping in his hands

interfered with daily functioning, and foot cramping interfered with his sleep. He reported continued worsening of tremor symptoms. Dr. Knapp doubled plaintiff's Requip dosage.

Following the ALJ's decision, plaintiff submitted two additional statements from Dr. Mitchko to the Appeals Council. The first, dated March 17, 2014, noted that Dr. Mitchko treated plaintiff regularly, at least twice a year. Dr. Mitchko opined that plaintiff exhibited symptoms of tremor, bradykinesia, postural instability, muscle weakness, pain/paresthesia, and numbness. In terms of functional limitations, Dr. Mitchko opined that plaintiff could walk less than one city block before needing to rest or experiencing severe pain; and that he could sit for 30 minutes at a time, stand for 20 minutes at a time, and sit, stand, and/or walk for less than two hours in an eight-hour workday. Dr. Mitchko stated that plaintiff could lift only 10 pounds occasionally, and that he would need to take unscheduled breaks from work more than 10 times in an eight-hour workday. According to Dr. Mitchko, plaintiff's limitations would require him to be "off task" at a job more than 30% of the time. In a second opinion submitted to the Appeals Council, Dr. Mitchko repeated his restrictive functional assessment, and stated that plaintiff suffered from Parkinson's disease, that his condition would decline, and that the onset of the disease was March 31, 2012.

**IV.   The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2013. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 30, 2008, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: Parkinson's disease, torsion dystonia, and paralysis agitans. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk, and sit, about six hours in an eight-hour workday; occasionally climb ramps and/or stairs and balance, never climb ladders, ropes, or scaffolds; never work at unprotected heights or near moving machinery; and occasionally handle and finger with both upper extremities. After consulting a vocational expert and finding that plaintiff could not perform any past relevant work, the ALJ determined that considering

plaintiff's age, work experience, and RFC, plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. The ALJ thus found that plaintiff was not disabled.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

In his brief, plaintiff argues that (1) the ALJ failed to adequately explain his step-three analysis that plaintiff's medical conditions did not meet a listing; (2) the ALJ's credibility assessment was erroneous; (3) the ALJ erred in finding that plaintiff had transferable job skills; and (4) the Appeals Council erred in assessing the opinions from Dr. Mitchko. Because the Court finds that the new evidence submitted to the Appeals Council established, in the context of the entire administrative record, that substantial evidence supported a finding that plaintiff

suffered from Parkinsonian Snydrome as described in Listing 11.06, the Court will not address plaintiff's remaining arguments.

Dr. Mitchko's opinions became a part of the administrative record when the Appeals Council denied review. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). Where this occurs, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015). This Court must thus determine whether substantial evidence supports the ALJ's decision, when Dr. Mitchko's treating physician opinions are included in the administrative record. For the reasons that follow, the Court concludes that, considering the entire administrative record, substantial evidence does not support the ALJ's decision that plaintiff did not meet Listing 11.06.

Initially, the Court notes that the Appeals Council rejected Dr. Mitchko's opinions, finding that "this new information [was] about a later time." T. 2. The Court disagrees. As Dr. Mitchko made clear in his second opinion, the onset date of plaintiff's Parkinson's disease was March 31, 2012. Therefore, the information related to the Parkinson's diagnosis – which included both of Dr. Mitchko's functional assessments – did relate to the relevant time period. See Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) ("The court based its finding of non-materiality on the fact that the new evidence did not explicitly refer to the relevant time period. We, however, conclude that the new evidence was

7

material."). Moreover, Dr. Mitchko had established a treatment relationship with plaintiff long before the ALJ's decision, a further indication that his opinion on plaintiff's overall condition related to the relevant time period. The Appeals Council was required to consider the new evidence from Dr. Mitchko with reference to the treating physician rule. See Davidson v. Colvin, 2013 WL 5278670, *8-9 (N.D.N.Y. Sept. 18, 2013) ("[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion. . . . Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is grounds for remand") (internal quotation marks omitted). The Court thus concludes that the Appeals Council erred in finding that this new evidence related solely to "a later time."

Plaintiff's medical record, through the time of the ALJ's decision, reflected a diagnosis of Parkinson's disease and indicated that his symptoms had been worsening over time. The Court will not assess the propriety of the ALJ's decision in light of the record before the ALJ at the time, but rather will assess the ALJ's decision in light of the entire administrative record, including the new evidence submitted to the Appeals Council. It cannot be seriously disputed that, taken alone, Dr. Mitchko's functional assessments established that plaintiff met Listing 11.06. That

listing states that a plaintiff suffers from Parkinsonian Syndrome, and is therefore disabled under the regulations, when he exhibits the following signs: "Significant rigidity, bradykinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.06. Dr. Mitchko's opinions, submitted to the Appeals Council after the ALJ's opinion, stated that plaintiff suffered from Parkinson's disease and that he suffered from tremor, bradykinesia, and postural instability associated with his disease. According to Dr. Mitchko, as described above, plaintiff's medical condition caused extreme limitations affecting all four extremities.

The Court finds that Dr. Mitchko's treating physician opinions, which must be assessed with regard to the treating physician rule, see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)), are supported by substantial evidence in the record. As noted above, the medical record at the time of the ALJ's decision established that plaintiff had been diagnosed with Parkinson's disease as of February 2013, and that his symptoms of cramping, tremor, and bradykinesia were progressively worsening. Additionally, plaintiff's symptoms of dystonia, a diagnosis which he had carried for years prior to his Parkinson's diagnosis, were actually related to an atypical presentation of Parkinson's disease. In the Court's view, there is

nothing in the record which sheds any significant doubt on Dr. Mitchko's functional assessments, which state that plaintiff's Parkinson's had its onset on March 31, 2012. The Court therefore finds that plaintiff's medical condition met Listing 11.06 as of that date. Accordingly, the Court finds that plaintiff has been presumptively disabled, under Listing 11.06, since March 31, 2012. This case is therefore reversed and remanded solely for calculation and payment of benefits as of that date.

The Court notes that the standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, see Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, see Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004). For the reasons stated above, that standard is met in this case. Additionally, the Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (citations omitted). Reversal for calculation of benefits is particularly appropriate because Plaintiff's benefits claim has been pending for over three years, and additional administrative proceedings would only lead to further delay.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 11) is denied and plaintiff's motion (Doc. 8) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits, as of the disability onset date of March 31, 2012. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                             **S/Michael A. Telesca**
                                               HON. MICHAEL A. TELESCA
                                           United States District Judge

Dated:    December 9, 2015
             Rochester, New York.